IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JULIE SCHULD,

                 Plaintiff,                        OPINION AND ORDER

    v.

                                           22-cv-601-slc

MARTIN O'MALLEY,
Commissioner of Social Security,

                 Defendant.

---

Plaintiff Julie Schuld is seeking review of a final decision by defendant Commissioner of Social Security[1] denying her claim for a period of disability, disability insurance benefits, and supplemental security income under the Social Security Act. She asks this court to reverse the commissioner's decision and remand her claim for new proceedings on the ground that the administrative law judge (ALJ) who denied her claim presented a one-sided view of the evidence that failed to adequately capture the severity of her mental impairments. Alternatively, Schuld seeks a remand under the sixth sentence of § 405(g) for consideration of additional evidence. Because I find that Schuld has not shown either that the ALJ's decision is not supported by substantial evidence or that she meets the criteria for remand under sentence six, I am affirming the Commissioner's decision.

FACTUAL BACKGROUND

**I. Background and Administrative Proceedings**

Plaintiff Julie Schuld is a now-58-year old woman who has struggled with depression, anxiety, suicide attempts, and alcoholism since her 40s. She has a high school diploma and

---

[1] Martin O'Malley has replaced Kilolo Kijakazi as the head of SSA. I have amended the case caption accordingly.

attended some college classes, but has not had steady employment since approximately 2013. Between 2012 and 2016, Schuld was hospitalized four times for suicidal ideation. Apart from court-ordered AODA counseling, Schuld received limited mental health treatment until July 19, 2019, when she established care with the Marshfield Clinic.

In August 2019, Schuld applied for both disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. She alleged that she was unable to work because of suicidal ideation, depression, post traumatic stress syndrome, and anxiety. (Schuld also stated that she had physical pain and "some scoliosis," but her physical impairments are not at issue in this appeal.) AR 434. Schuld's eligibility for DIB expired on September 30, 2019, meaning that to be eligible for benefits under that program, she had to establish that she was disabled before that date.

On forms submitted with her disability applications, Schuld reported that she had post-traumatic stress caused by having been abused by her ex-husband for approximately 25 years, whom she divorced in 2011. Schuld stated that her husband had threatened to kill her if she ever left him and that he "has stalked me since I left him and I don't know how." AR 438. Schuld told the local disability agency that, due to her mental conditions, she had rarely left her rented apartment since April or May of 2018. AR 444, 450. She reported being so depressed that she did "nothing" except cook simple meals, do laundry in her sink, and talk occasionally on the phone. She reported that she didn't sleep much, got "crabby," and had problems getting along with others. Dkt. 455. She went out approximately twice a week to purchase necessities, either walking to a store or getting a ride with her mother.

Soumya Palreddy, Ph.D., a consulting psychiatrist for the local disability agency, reviewed Schuld's claims on October 21, 2019. To determine whether Schuld's mental impairments were disabling, Palreddy evaluated Schuld's limitations in four functional areas: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing herself.  Palreddy concluded that Schuld had moderate limitations in all four areas. Rating Schuld's social interaction limitations, Palreddy opined that Schuld had moderate limitations in her ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors. AR 114. Translating these limitations into narrative form, Palreddy found that Schuld was "able to accept supervision and successfully engage in superficial work task interpersonal interactions." AR 114-115.

Palreddy observed that Schuld had a documented history of alcohol abuse that contributed to her reduced functioning. AR 111. Nevertheless, Palreddy concluded that Schuld's mental status exams were "overall intact" and that Schuld seemed capable of performing simple repetitive tasks "regardless of alcohol abuse." AR 111. Based on this evaluation, the local agency denied Schuld's claim.

On reconsideration, a second agency consultant, JoAnne Coyle, Ph.D., reviewed the record on March 12, 2020, and reached essentially the same conclusions as Palreddy. AR 141-43. Coyle shared Palreddy's view that alcohol use played a significant role in Schuld's dysfunction, noting that she had been guarded and evasive with treatment providers about her use. AR 137, 140. The agency again denied the claim.

Schuld initially missed her deadline to appeal, but was able to obtain legal counsel who persuaded the agency to reinstate her claim. In March 2021, Schuld had a telephonic hearing before Administrative Law Judge Ahavaha Pyrtel. Schuld testified that she could not work because she is anxious and nervous, experiences dramatic mood swings and has difficulty concentrating. She said she felt defensive and on edge whenever she had to go anywhere, had isolated herself from most people for the past three years, and had trouble sitting still.  AR 84. She passed the time either watching television, pacing the floor of her duplex, or just sitting or lying in silence. AR 89. She also testified to having auditory hallucinations and recurrent suicidal ideation. AR 94.

ALJ Pyrtel issued an unfavorable decision on May 19, 2021. But the Appeals Council vacated it, finding that the ALJ had not adequately evaluated medical records documenting Schuld's audio hallucinations, high levels of depression and anxiety, and her apparent overdose in October 2020. The Appeals Council was also concerned that the ALJ had placed too much weight on some of Schuld's statements in her function reports in assessing her limitations instead of viewing the record as a whole. The council remanded the case to the ALJ to further evaluate Schuld's mental impairments, including obtaining evidence from a medical expert if necessary. AR 180-82.

ALJ Pyrtel held a telephonic hearing on January 11, 2022. The ALJ called a medical expert and a vocational expert. Schuld did not offer additional testimony about her limitations but answered some questions about her alcohol use. She acknowledging that she had "purchased" alcohol maybe a week or two before the hearing, which she said was the first time

she had done so for several months. AR 52-53.  She was not participating in any AODA treatment. AR 52.

The medical expert, Lillie McCain, Ph.D., testified that the objective medical record did not support a diagnosis of or a finding of any limitations caused by any mental impairment. In McCain's opinion, all of Schuld's functional limitations, symptoms, and episodes of decompensation could be attributed to Schuld's ongoing alcohol abuse, which was documented throughout her medical record.[2] AR  59-61. McCain further opined that, even considering Schuld's alcohol use, she had at most moderate limitations in her ability to:  concentrate, persist, and maintain pace; interact with others; and adapt or manage herself. AR 62. In support, McCain noted that Schuld's mental status exams indicated that she was "quite in touch with reality and cognition is not significantly impaired to the point she is not unable to adapt and cope." AR 62. In McCain's opinion, the records reflected an individual who had learned to function but to a great extent was in denial about her alcohol use. AR 62.

## II. ALJ Decision

On January 31, 2022, ALJ Pyrtel issued a decision in which she again denied Schuld's claim. AR 13-36.  Following the five-step sequential evaluation process set forth in the regulations, *see* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4), the ALJ first found that Schuld had not engaged in substantial gainful activity after her alleged onset date. At step two, the ALJ determined that Schuld had several severe mental impairments: major depressive disorder,

---

[2]Sections 223(d)(2)(C) and 1614(a)(3)(J) of the Social Security Act provide that a claimant "shall not be considered to be disabled . . . if alcoholism or drug addiction would  . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."

generalized anxiety disorder, personality/impulse control disorder, post-traumatic stress disorder (PTSD), and alcohol addiction disorder.

At step three, the ALJ found that Schuld's impairments were not severe enough to meet or medically equal the criteria for a listed disability. In evaluating Schuld's mental impairments at this step, the ALJ considered whether the "paragraph B" criteria of the listings were satisfied, which required her to rate Schuld's degree of limitation in four broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing herself. The ALJ concluded that Schuld's psychological impairments resulted in moderate limitations in each of the four areas. Because Schuld had neither an "extreme" limitation in one area, nor a "marked" limitation in two areas, she did not meet the criteria of any listed psychological impairment.

Next, the ALJ assessed Schuld's residual functional capacity (RFC), taking into account the medical evidence and various medical opinions in the file, as well as statements from Schuld and third parties concerning her functional abilities and daily activities. The ALJ concluded that in spite of Schuld's mental health issues, including her alcohol addiction, Schuld was capable of performing simple, routine and repetitive tasks with few changes in a routine work setting, in a job that required no interaction with the public, only occasional interaction with supervisors and co-workers, and which demanded a Reasoning Level of two or less.[3]

The ALJ explained that she had considered Schuld's testimony that she was unable to work because of severe anxiety, auditory hallucinations, recurrent suicidal ideation, mood swings, and defensiveness, but found it only partially supported by the record. In support of this

_____

[3]"Reasoning Level" is a reference to one of the criteria used in the *Dictionary of Occupational Titles* to describe the skills demanded by a particular job title.

6

conclusion, the ALJ provided these reasons: (1) Schuld had sometimes failed to follow up with treatment recommendations and struggled with medication compliance, which suggested that her symptoms were not as serious as she had alleged; (2) Schuld's alcohol use was problematic and appeared to be contributing to her decreased mental functioning; (3) Schuld had "sometimes" denied any significant functional difficulties; and (4) most of Schuld's mental status exams revealed "minimal objective findings." AR 31.

The ALJ also considered the medical opinions from the state agency consultants, Dr. McCain, and Dr. Wagdy Khalil, a psychiatrist whom Schuld had begun seeing in January 2021. Although the ALJ agreed with McCain that Schuld's severe alcohol abuse made it difficult to evaluate her other diagnoses, she did not find persuasive either McCain's conclusion that Schuld was not suffering from any other mental impairment besides a substance abuse disorder, or her conclusion that Schuld would have no significant functional limitations if it was not for her alcohol addiction. AR 34. Instead, the ALJ concluded that even considering Schuld's alcohol abuse, she had only moderate limitations in all functional areas.

The ALJ found that the opinions from the state agency medical consultants were "partially persuasive." She agreed with their conclusion that Schuld had only moderate functional limitations, but she disagreed with their conclusion that Schuld could tolerate only "superficial" work tasks and interpersonal interactions. AR 32. In the ALJ's view, this conclusion was internally inconsistent with the consultants' statements elsewhere in their reports that Schuld was able to accept supervision. She also found it inconsistent with reports from Schuld that she occasionally spent time with others, her "implicit" denial on a function report that she had problems getting along with neighbors and others, her denial that she had lost a job

due to problems getting along with people, and with her mental examinations. The ALJ stated that while the mental status exams "sometimes show the claimant to be anxious," they also noted her to be alert and cooperative, with fair to good eye contact, normal speech and language and intact associations. AR 32.

The ALJ also considered a February 2021 statement from Dr. Khalil that Schuld met the severity requirements for both a depressive disorder and an anxiety disorder. AR 1936-38. Dr. Khalil found that as a result of her disorders, Schuld had either an extreme or marked limitation in her ability to interact with others, concentrate, persist, or maintain pace, and adapt or manage herself. He also concluded that Schuld's depressive disorder had been in existence for at least two years, and that, in spite of ongoing medical treatment, mental health therapy, or a highly-structured setting, Schuld had only minimal capacity to adapt to environmental changes or demands that were not already part of her daily life. Dr. Khalil wrote:

> Ms. Schuld is suffering from recurrent Major depression, severe with Psychotic features, Generalized anxiety disorder. [H]er coping/adaptation mechanisms are very limited. The mood and Psychosis that includes paranoid delusions can interfere/limit her ability to do her job on a consistent basis.

> AR 1937.

The ALJ found Dr. Khalil's opinion generally unpersuasive. She noted that he had only seen Schuld once at the time he completed the form, and that neither his mental status examination from that one visit nor mental status exams in the rest of the record supported the significant limitations he endorsed. The ALJ also found that Dr. Khalil's statements did not address Schuld's functioning prior to January 4, 2021. AR 33.

Relying on the testimony of the vocational expert, the ALJ concluded at step four that Schuld was unable to perform any of her past relevant work. However, the ALJ found that Schuld was able to make a vocational adjustment to a substantial number of other jobs existing in the national economy, such as cleaner, industrial cleaner, and kitchen helper. Therefore, the ALJ concluded that Schuld was not disabled at any time from her onset date through the date of her decision.

## III. Appeals Council

On March 17, 2022, counsel for Schuld submitted a request for review of the ALJ's January 2022 decision. AR 349-50. Counsel asked for an extension of time, but did not submit a brief or any additional records at that time. On March 18, 2022, the Appeals Council said that if counsel had additional evidence that was new and material, and for which there was good cause for it not being submitted earlier, he had 25 days to sent it to the Appeals Council. AR 7.

Counsel for Schuld did not send anything to the Appeals Council and he did not ask for more time before the 25 days expired. On July 15, 2022, he submitted a brief in support of Schuld's request for review that said nothing about additional medical records.  Dkt. 13-4. On August 4, 2022, counsel submitted additional records from Dr. Khalil covering the time period from March to October 2021.  Dkts. 13-2, 13-3. Neither of these exhibits was incorporated into the administrative record. On August 17, 2022, the Appeals Council denied Schuld's request for review without considering her representative's brief or the additional medical records.

OPINION

The court reviews an ALJ's decision on disability benefits under a substantial-evidence standard. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. ——, 139 S. Ct. 1148, 1152 (2019). Substantial evidence is not a high threshold; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal citations omitted). In evaluating a claim of disability, an ALJ must consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). But if the ALJ builds an accurate and logical bridge between the evidence and the conclusion, then the court must defer to the ALJ's judgment and weighing of the evidence. *Peeters v. Saul*, 975 F. 3d 639, 641 (7th Cir. 2020). In reviewing an ALJ's decision for fatal gaps or contradictions, the court reads the decision as a whole and with common sense rather than nitpicking at it. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010).

Schuld asks this court to reverse the ALJ's decision and remand the case on the ground that the ALJ's decision is not supported by substantial evidence. Alternatively, she seeks a remand under the sixth sentence of § 405(g) for consideration of additional evidence.

## I. ALJ Decision

On appeal, Schuld argues that the ALJ engaged in "cherry-picking," which led her to downplay the severity of Schuld's limitations in evaluating the paragraph B criteria of the listings

at step three, in determining her RFC at step four, and in evaluating the medical opinions.[4] Specifically, she challenges the ALJ's citation to mental status exam findings in which Schuld was observed to be alert and cooperative, with fair to good eye contact, normal speech and language, and intact associations.  AR 19.  Schuld says the ALJ's "string citation" does not constitute substantial evidence because the ALJ ignored the fact that at these very same visits, Schuld's scores on self-administered diagnostic tools (the (PHQ)-9 and the (GAD)-7) were consistent with both severe anxiety and depression, and she was observed to have a depressed affect and mood, auditory hallucinations and delusional thoughts.  *See* AR 1161, 1747, 1734-35, 1758, 1777, 1793-1794, 1983, 1931.  Schuld argues that the ALJ's determination that good eye contact, normal speech and language and intact associations are "more telling" than irritability, dramatic mood swings and auditory hallucinations is "not logically sound." AR 21.

In response, the Commissioner says that Schuld's argument amounts to an improper invitation for the court to reweigh the evidence.  I agree. As the Commissioner points out, the ALJ's decision was comprehensive.  She reviewed the medical records in detail and discussed all of the evidence that Schuld cites in her brief, including her reports of auditory hallucinations, reported high levels of anxiety and depression, her delusional thinking, and her inpatient hospitalization in October 2020.  AR 22-27.  Like many ALJ decisions, ALJ Pyrtel's decision was long on summary and short on analysis.  But this court must affirm it so long as she provided

---

[4] Schuld also asserts that the ALJ's evaluation of the listings for depressive disorder and anxiety disorder was "highly flawed" because it overlooked "important signs and symptoms" of the listings as described in the Paragraph A criteria, such as depressed mood, feeling of guilt or worthlessness, or preoccupation with intrusive, unwanted thoughts. Dkt. 16, at 20.  However, the "signs and symptoms" identified in Paragraph A are simply the medical criteria necessary to establish the existence of the disorders; they do not speak to the severity of the disorder.  The severity analysis occurs in assessing the four areas of functioning described in Paragraph B.  The ALJ found that the medical criteria for both depressive disorder and anxiety disorder were met, so the court really isn't sure what Schuld is arguing here.

a glimpse into her reasoning and supported her conclusions with reasonably adequate evidence. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

This standard, which the Seventh Circuit deems "lax," *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008), has been met here. ALJ Pyrtel acknowledged that Schuld's mental status exams presented a mixed picture. But it's plain enough from her decision why she determined that the more concerning findings—the auditory hallucinations, paranoid delusions and suicidal ideation—were not disabling. The ALJ noted that beginning around March 2021, after establishing care with Dr. Khalil and being placed on a medication regime, Schuld entered a period of "psychiatric stability," where she reported being able to go outside with a neighbor to Costco, she denied auditory hallucinations or suicidal ideation, she was described as "alert, coherent and focused" with mental exams within normal limits, and she reported that her current medication regimen seemed to be keeping things controlled for her. AR 27. Echoing Dr. McCain's testimony from the hearing, the ALJ further found that Schuld's alcohol abuse was a significant factor contributing to her mental health problems. In addition, the ALJ found that Schuld's history of medication noncompliance suggested that her symptoms were not as severe as she alleged.

Schuld doesn't challenge any of these findings, none of which strikes me as patently unreasonable. What is more, the ALJ's conclusion that Schuld had only moderate functional limitations was supported by the opinions of the state agency consultants and by Dr. McCain, who reached that same conclusion.

As for the RFC determination, Schuld argues that the ALJ erred by relying on this same "string citation," *i.e.*, the relatively normal mental exam findings, as a basis for rejecting the state

agency consultants' finding that Schuld could tolerate only brief and superficial interactions with co-workers and supervisors, and for concluding instead that Schuld could handle occasional (up to one-third of the day) contact with supervisors and coworkers.  Insofar as Schuld suggests that remand is required because the ALJ didn't specifically mention Schuld's problems with irritability, mood swings and auditory hallucinations in this part of her decision, *see* dkt. 16, at 27, her objection is not well-taken. As noted, the ALJ's opinion must be read as a whole, and it's plain from her earlier discussion that she had considered this evidence.

In addition, the ALJ did not rely *only* on the mental status examinations in concluding that Schuld could tolerate more than brief and superficial interactions with coworkers and supervisors. She also noted that the consultants' description of Schuld's limitations appeared partially inconsistent with other portions of their reports, in which they found that Schuld was able to accept supervision, and with Schuld's own statements on function reports, where she denied having been fired or laid off from a job due to problems getting along with other people or having problems getting along with neighbors or others. AR 32. Once again, Schuld does not challenge these other findings by the ALJ.

Collectively, the ALJ's reasons adequately support her RFC determination. Accordingly, this court must defer to the ALJ's assessment.  *See Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (ALJ must "provide some evidence supporting her determination," but not all of her reasons need be supported by the record).

Finally, Schuld argues that the ALJ erred in finding Dr. Khalil's opinion unpersuasive. Under the commissioner's regulations for evaluating medical opinions, an ALJ must consider opinions from medical sources, but she is not required to defer or give any specific evidentiary

13

weight to them, even one from a treating doctor. 20 C.F.R §§ 404.1520c(a), 416.920c(a). In evaluating the persuasiveness of medical opinions, the ALJ considers the degree to which the opinion is supported by objective medical evidence and supporting explanations, the consistency of the opinion with evidence from other medical sources, the source's relationship with the claimant and the length of that relationship, the frequency of examinations, and other factors. 20 C.F.R §§ 404.1520c(c), 416.920c(c).  Although the ALJ is to consider all the factors, her decision need only explain her conclusions as to supportability and consistency, which are the most important of the factors. 20 C.F.R §§ 404.1520c(b), 416.920c(b).

Applying these factors to Dr. Khalil's opinion, the ALJ found the opinion unpersuasive for the following reasons: (1) the overall objective evidence in the record did not support such significant limitations; (2) Dr. Khalil had only seen Schuld once before providing his opinion; (3) the doctor's objective exam findings from that visit were not consistent with the limitations he endorsed: and (4) the doctor's statements did not address Schuld's functioning before the date of that visit (January 4, 2021).  AR 33.

Schuld argues that the ALJ "played doctor" and exceeded her role by "reinterpreting" Khalil's January 4, 2021 examination. Schuld points out that during that examination, Dr. Khalil observed that Schuld had "guarded" behavior, a depressed mood and constricted affect, spoke slowly and quietly, and was positive for paranoid delusions and auditory hallucinations, noting that Schuld's "paranoid delusions interfere[d] with getting more information today." AR 1931.

I agree that the ALJ may have overstepped her bounds somewhat in concluding that Dr. Khalil's own treatment notes did not support his conclusions about the severity of Schuld's

condition. His notes indicate that Schuld was having paranoid delusions, which was the main reason why he opined that Schuld would have trouble performing a job on a consistent basis. At the same time, however, it is undisputed that Dr. Khalil offered his opinion based only on that single assessment. As the ALJ noted and as already discussed, Schuld's condition appeared to improve somewhat a few months later. Schuld does not challenge the ALJ's finding that Dr. Khalil did not address Schuld's functioning before January 4, 2021 (recall that her DIB eligibility expired on September 30, 2019). Overall, the record adequately supports the ALJ's determination that Dr. Khalil's opinion based on his one-time visit with Schuld was not persuasive in light of the other objective evidence in the record.

Further, as the Commissioner points out, the ALJ agreed with Dr. McCain that Schuld's alcohol abuse, if not necessarily the entire cause of her functional limitations, was her "central" problem, and it complicated the evaluation of her other mental impairments. AR 34. So far as it appears from Dr. Khalil's opinion, he did not consider the extent to which Schuld's alcohol addiction was contributing to her mental health issues. *See* AR 1930 (noting that Schuld reported having "quit" using alcohol in October 2020). Where the ALJ was faced with the competing opinions from Dr. McCain and Dr. Khalil, as well as those from the state agency consultants, I cannot conclude that it was unreasonable for her to give more weight to the opinions that took Schuld's alcohol abuse into account.

In sum, when read as a whole, the ALJ's decision reflects that although she chose to emphasize minimal abnormal findings during mental status exams, she did not ignore the more significant findings. Rather, she explained why they did not compel a finding of more severe limitations. She also cited other evidence in support of her conclusions that Schuld has not

challenged. Overall, I am satisfied that the ALJ did not engage in prohibited cherry-picking, but instead reasonably weighed the competing evidence.   Although the court empathizes with Schuld's difficulties and might have reached a different conclusion if it had it been the decision-maker, this court may not reverse an ALJ's decision if it is supported by substantial evidence. The ALJ's decision meets that relatively low evidentiary standard, so the court must affirm it.


## II.  Additional Evidence

Pursuant to sentence six of § 405(g), "[a] reviewing court may order additional evidence to be taken before the Commissioner upon a showing that there exists 'new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Schmidt v. Barnhart*, 395 F.3d 737, 741–42 (7th Cir. 2005) (quoting 42 U.S.C. § 405(g)).   "Evidence is 'new' if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Schmidt*, 395 F.3d at 742 (quoting *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)). "New evidence is 'material' if there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt*, 395 F.3d at 742 (quoting *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999)). "Thus, new evidence is material only if it is relevant to the claimant's condition 'during the relevant time period encompassed by the disability application under review.'" *Schmidt*, 395 F.3d at 742 (quoting *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990)).

In the introduction to her brief and in her point heading, Schuld asserts that "remand is merited under sentence six so the [Appeals Council] can consider additional evidence," namely her post-hearing brief and the medical records from Dr. Khalil.  *See* Dkt. 16, at 8, 31.  However,

in the body of her brief, Schuld devolves into a largely inscrutable argument that appears to be that the Appeals Council failed to comply with SSA regulations and its own rules by not incorporating the new evidence into the record—even though Schuld did not file it within the 25-day deadline set by the Appeals Council, did not ask for more time to do so, and did not attempt to show good cause for her delay.

Schuld does not cite any authority holding that a remand under sentence six is available to correct an alleged procedural error by the Appeals Council. Nor does she cite any authority to support her claim that the Appeals Council cannot establish its own deadlines for the submission of briefs or additional evidence; indeed, the Seventh Circuit's decision in *Schmidt* suggests otherwise. 395 F.3d at 741 (rejecting argument that "a claimant who fails to submit readily available evidence to an ALJ, then obtains [a 25-day] extension of time to submit additional evidence to the Appeals Council but fails to submit any evidence during the extended period, may justify these failures by pointing to a second, last-minute request for a second extension of time that was not granted.").

Most critically, Schuld does not develop an argument that she satisfies the criteria for a sentence six remand. The last of the additional records from Dr. Khalil is from October 26, 2021, two and a half months before Schuld's administrative hearing. Dkt. 13-2, at 22. Schuld fails to explain why she didn't submit Dr. Khalil's records to the ALJ before or after the hearing, or to the Appeals Council before August 4, 2022. Absent any explanation, this court lacks a basis to find either good cause, or that the records were "new." *Schmidt*, 395 F.3d at 743 (evidence was not "new" where claimant's records existed and were available to the claimant at the time of the administrative hearing). So, even if the records are material (another argument

17

Schuld fails to develop), this court would not have authority to remand the case under sentence six.[5]

ORDER

IT IS ORDERED THAT the decision of the Commissioner of Social Security denying Julie Kaye Schuld's applications for disability insurance benefits and supplemental security income under the Social Security Act is AFFIRMED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 29th day of March, 2024.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge

---

[5]Contrary to Schuld's argument on reply, the Commissioner did not waive the sentence six argument by not responding to it.  Schuld waived the argument by failing to develop it in the first place. Mere point headings don't count.